UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
THE ANNUITY, WELFARE AND
APPRENTICESHIP SKILL IMPROVEMENT &
SAFETY FUNDS OF THE INTERNATIONAL
UNION OF OPERATING ENGINEERS LOCAL
15, 15A, 15C & 15D, AFL-CIO, BY
THEIR TRUSTEES JAMES T. CALLAHAN,
THOMAS A. CALLAHAN, MICHAEL SALGO
and WILLIAM TYSON, CENTRAL PENSION
FUND OF THE INTERNATIONAL UNION OF          **ORDER FOR ENTRY**
OPERATING ENGINEERS, BY ITS CHIEF            **OF JUDGMENT**
EXECUTIVE OFFICER MICHAEL A.                 20-cv-05896 (KAM)
CRABTREE, INTERNATIONAL UNION OF
OPERATING ENGINEERS NATIONAL
TRAINING FUND, BY ITS CHIEF
EXECUTIVE OFFICER JEFFREY VINCENT,
and INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 15, 15A,
15C & 15D, AFL-CIO BY ITS PRESIDENT
& BUSINESS MANAGER THOMAS A.
CALLAHAN,

                    Plaintiffs,

          -against-

MIDWEST REM ENTERPRISES, INC.,

                    Defendant.
----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

          Plaintiffs, The Annuity, Welfare and Apprenticeship

Skill Improvement & Safety Funds of The International Union of

Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("Local 15

Trust Funds"), by their trustees James T. Callahan, Thomas A.

Callahan, Michael Salgo and William Tyson, Central Pension Fund

of The International Union of Operating Engineers ("CPF"), by

its Chief Executive Officer Michael A. Crabtree, International Union of Operating Engineers National Training Fund ("NTF"), by its Chief Executive Officer Jeffrey Vincent, and International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("Local 15"), by its President and Business Manager Thomas A. Callahan, commenced this action against Midwest REM Enterprises, Inc. ("Midwest REM" or "defendant") pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor Management Relations Act of 1947 (the "Taft-Hartley Act"), 29 U.S.C. § 185.  Plaintiffs seek to compel an audit of defendant's payroll records and to recover certain unpaid contributions due to the Local 15 Trust Funds, CPF, and NTF (collectively, the "Funds").  (*See generally* ECF No. 1, Complaint filed 12/4/20 ("Compl.").)  In addition, plaintiffs seek interest on those unpaid contributions, liquidated damages, reasonable attorney's fees, auditor's fees, and costs. (*Id.* ¶ 45.)

Plaintiffs properly served defendant with a Summons and the Complaint on January 25, 2021, and proof of service was filed on February 3, 2021. (ECF No. 5, Executed Summons.)  Upon failure of defendant to appear, answer, or respond to the Complaint after receiving proper service of process, plaintiffs now move for (1) entry of default judgment; (2) issuance of an

order compelling cooperation with plaintiffs' audit request; and (3) opportunity to seek additional relief. (*See* ECF No. 11, Plaintiffs' Memorandum of Law in support of Plaintiffs' Motion for Default Judgment ("Pls.' Mem.").) Plaintiffs also seek attorney's fees in the amount of $2,887.50 and litigation costs in the amount of $517. (*Id.*) Defendant has failed to answer plaintiffs' Complaint and has not submitted any opposition to plaintiffs' motion for entry of default judgment, despite having received notice and an opportunity to do so. (*See* ECF No. 5, Summons Returned Executed; ECF No. 12, Cert. of Serv. of Pls.' Mot. for Def. Judgment.)

For the reasons set forth below, the court grants plaintiffs' motion for entry of default judgment against Midwest REM in part, grants plaintiffs' request for audit in part, defers consideration of plaintiffs' application for damages, and grants plaintiffs' motion for attorney's fees and costs.[1]

**BACKGROUND**

I.   **Facts**

The following undisputed facts are taken from plaintiffs' complaint, the Chase affidavit, the Steinberg affidavit, and the documentary evidence attached thereto. The

---

[1] As will be discussed in Discussion Part I., *infra*, plaintiffs seek a liability determination and request an audit for the period July 1, 2016 through October 31, 2020. This court finds Defendant liable for unpaid contributions and grants an audit for the period November 24, 2017 through October 31, 2020.

Funds constitute multiemployer/employee benefit plans in accordance with Section 302 of the Taft-Hartley Act. (*See* Compl. ¶¶ 8, 12, 15.)  The Funds provide certain benefits to eligible employees by collecting monetary contributions from employers who enter into collective bargaining agreements with Local 15 (the "Union"). (*See* ECF No. 9, Aff. of Catherine Chase in Supp. of Mot. for Default Judgment ("Chase Aff.") ¶ 4; Compl. ¶ 24.) The Union entered into one such collective bargaining agreement (the "CBA") with Midwest REM, a construction corporation.[2] (*See* Compl. ¶¶ 23-25; Chase Aff. ¶ 3.)

     The CBA obligates Midwest REM to remit contributions through the purchase of stamps. (*See* Compl. ¶¶ 24-25; ECF No. 10, Aff. of James M. Steinberg, Esq. in Supp. of Mot. for Default Judgment ("Steinberg Aff.") ¶ 7.)  The stamps enable the Funds administrator to determine if payments received accurately reflect amounts owed on behalf of individual employees. (Chase Aff. ¶ 2.)

     Pursuant to the CBA, Midwest REM acknowledged and agreed to be bound by certain collective bargaining agreements between the Union and various associations based on the type of work performed. (Chase Aff. ¶ 3; Steinberg Aff. ¶ 6.)  The

---

[2] The principal place of business of Midwest REM appears to be 2601 West Le Moyne Street, Melrose Park, Illinois. (Compl. ¶ 19.)  There is contradictory information in plaintiffs' complaint as to defendant's place of incorporation and business relationship to New York. (*Id*. ¶¶ 19-21.)

parties also agreed to be bound by the agreements and declarations of trusts, amendments, and regulations thereto as referenced in the applicable association collective bargaining agreements. (Compl. ¶ 30; Steinberg Aff. Ex. B ¶ 4.) For Midwest REM, the applicable association collective bargaining agreements are between the Union and the General Contractors Association of New York ("GCA"), which reference the agreements of the Funds. (Chase Aff. ¶¶ 3-4; Steinberg Aff. ¶ 8.) The Funds' agreements establish that plaintiffs, as trustees or representatives of the Funds, may examine the pertinent books and records as needed for the proper administration of the Funds. (Compl. ¶¶ 30-33.)

In their Complaint, plaintiffs allege that Midwest REM violated ERISA, the agreements of the Funds, and the CBA by refusing to produce requested documents or schedule an audit. (*Id.* ¶ 35.) Plaintiffs further maintain that Midwest REM failed to remit the required Fund contributions for the period of July 1, 2016, through October 31, 2020. (*Id.* ¶¶ 37, 42.)

## II.  Procedural History

Plaintiffs filed this action on December 4, 2020. (*See* Compl.) On January 25, 2021, a process server served a copy of the summons and complaint on Midwest REM through Nancy Dougherty, an employee in the Office of the New York Secretary of State and a person authorized to accept service. (Steinberg

5

Aff. ¶ 5; Ex. A.)  On February 3, 2021, plaintiffs filed proof

of said service.  (ECF No. 5.)  At plaintiffs' request, the

Clerk of the Court entered default against defendant on February

22, 2021. (ECF No. 6, Pls.' Request for Cert. of Def.; ECF No.

7, Clerk's Entry of Def.)  On February 23, 2021, plaintiffs

moved for entry of default judgment against defendant. (*See* ECF

No. 8, Plaintiffs' Notice of Mot. for Default Judgment ("Pls.'

Notice"); ECF No. 11, Pls.' Mem.; ECF No. 12, Cert. of Serv. of

Pls.' Notice of Mot. for Def. Judgment.)  In support of their

default judgment motion, plaintiffs submitted the affidavit of

Funds administrator Catherine Chase and the attorney affidavit

of James M. Steinberg, Esq., along with a copy of the CBA, the

two GCA agreements, copies of the Funds' respective Agreements

and Declarations of Trust (the "Trust Agreements"), and

materials in support of attorney fees and litigation costs. (*See*

*generally* Chase Aff.; Steinberg Aff.)  Defendant has not

submitted any opposition to plaintiffs' motion for entry of

default judgment, despite being served.

### DISCUSSION

"Rule 55 of the Federal Rules of Civil Procedure

provides a two-step process for obtaining a default judgment."

*Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).

*First*, a plaintiff must obtain an entry of default. *Id*.  "When a

party against whom affirmative relief is sought has failed to

plead or otherwise defend, a plaintiff may bring that fact to the court's attention," *id*. at 505, and the Clerk of Court must thereafter enter a default, Fed. R. Civ. P. 55(a). *Second*, once default is entered, a plaintiff must "apply to the court for a default judgment." *Id*. 55(b)(2). Whether to grant a default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). The court must be mindful that a defendant's default functions as an admission of all well-pleaded factual allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Yet, the court must ensure that "[the plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Id*. (citing *Au Bon Pain*, 653 F.2d at 65).

Moreover, although the court accepts well-pleaded factual allegations as true in determining liability, this does not apply to allegations related to damages, *Au Bon Pain*, 653 F.2d at 65, which the plaintiff must prove to the court with "reasonable certainty," *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Although "a

party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound*, 973 F.2d at 158. Rule 55 states that "[t]he court may conduct hearings or make referrals ... when, to enter or effectuate a judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit has held that allegations in the complaint and the affidavit of plaintiff's counsel "asserting an amount of damages sustained by plaintiff ... [were] insufficient evidence upon which to enter the amount of the judgment." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999). "'Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with

reasonable certainty.'" *Gragg v. Int'l Mgmt. Grp. (UK)*, No. 5:03-cv-904 (NPM)(DEP), 2009 WL 1140490, at 2 (N.D.N.Y. Apr. 24, 2009) (quoting *Credit Lyonnais*, 183 F.3d at 154-55). A hearing is not necessary where the record contains a detailed affidavit and documentary support that enables the court to evaluate and determine the amount of a damages award. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *United States v. Tobee*, 10-cv-731 (JS), 2010 WL 1853767, at 1 (E.D.N.Y. May 4, 2010).

Here, the Clerk of the Court entered a default against defendant on February 22, 2021, and plaintiffs thereafter filed the instant motion for entry of default judgment. To date, defendant has not appeared in this action and has failed to answer the Complaint or oppose plaintiffs' default motion. Consequently, plaintiffs have completed the necessary steps to obtain a default judgment as to liability. *See Bricklayers Ins. & Welfare Fund v. David & Allen Contracting, Inc.*, No. 05-cv-4778 (SJ)(VVP), 2007 WL 3046359, at 2 (E.D.N.Y. Oct. 16, 2007) ("In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default.") (citing *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir. 1984)).

## I. Audit

Plaintiffs seek an order requiring defendant to submit to an audit of its books and records for the period from July 1, 2016 through October 31, 2021, in order to ascertain the amount, if any, of unpaid contributions due to the Funds. Plaintiffs submitted supporting documents for their audit request including a copy of the CBA (Steinberg Aff., Ex. B.), copies of the GCA agreement from July 1, 2014 through June 30, 2018 (Steinberg Aff., Ex. C-1.), its extension from July 1, 2018 through June 30, 2022 (Steinberg Aff., Ex. C-2.[3]), and copies of the Trust Agreements for the Apprenticeship, Skill Improvement and Safety Fund (Steinberg Aff., Ex. D.), the Welfare Fund (Steinberg Aff., Ex. E.), the Annuity Fund (Steinberg Aff., Ex. F.), CPF (Steinberg Aff., Ex. G.), and NTF (Steinberg Aff., Ex. H.). The CBA submitted by plaintiffs became effective November 24, 2017. (Steinberg Aff., Ex. B at 1.) Plaintiffs failed to include a

---

[3] Unlike the copy of the initial GCA agreement, the attached copy of the GCA agreement between July 1, 2018 and June 30, 2022 is unsigned. (Steinberg Aff., Ex. C-1 at 84; Ex. C-2 at 84.) Even if the relevant unions and GCA did not sign this agreement, however, the Second Circuit has held that an obligation to make plan contributions under ERISA is not dependent on a CBA signature. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir.1999) (holding that an unsigned subsequent CBA after an initial signed CBA satisfied the written agreement prong of LMRA Section 302(c)(5)(B)). As Midwest REM did sign the CBA immediately at issue, incorporating other agreements, there is sufficient evidence to find an intention by Midwest REM to be bound. (Steinberg Aff., Ex. B at 2.) *See Labarbera v. ASTC Labs. Inc.*, 752 F.Supp.2d 263, 271 (E.D.N.Y.2010) ("A writing other than a CBA may suffice if 'the employer has expressed an unequivocal intention to be bound in collective bargaining by group rather than individual action'" (quoting *Wenzel v. Jeff Parking Corp.*, No. 94-cv-0831 (AJP), 1995 WL 258055, at *3 (S.D.N.Y. May 3, 1995))).

copy of the CBA or CBAs effective between the relevant parties for any date prior to November 24, 2017.

Section 502(g)(2) of ERISA authorizes the court to award the Funds "legal or equitable relief as the court deems appropriate." Having reviewed plaintiffs' current submission, the court finds that the CBA was effective from November 24, 2017, through October 31, 2020. In the absence of a copy of the relevant CBA for the period prior to November 24, 2017, the court cannot verify whether defendant was bound by a CBA with the Union for the period from July 1, 2016 through November 24, 2017. Therefore, plaintiffs shall be permitted to conduct an audit of defendant's books and records only for the period from November 24, 2017 through October 31, 2020.[4] If a CBA containing an audit provision was in effect between July 1, 2016 through November 24, 2017, plaintiffs are directed to submit appropriate supplemental documentation within fourteen (14) days of the date of this Order.

---

[4] Defendant shall be required to produce corporate payroll records; cash disbursement records; Tax Forms 941s; quarterly payroll tax forms (also known as NYS-45 Tax Forms); Tax Forms W-2s; payroll reports (as provided to the union or fund office); and canceled checks. *See Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO v. Marbro Realty Co. Inc.*, No. 11-cv-5722 (FB)(RER), 2012 WL 3536499 (E.D.N.Y. July 16, 2012), *report and recommendation adopted sub nom. The Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO ex rel. Christian v. Marbro Realty Co. Inc.*, No. 11-cv-5722 (FB)(RER), 2012 WL 3542317 (E.D.N.Y. Aug. 14, 2012) (recommending audit of similar documentation).

**II. Liability**

Defendant's default in this case "does not necessarily conclusively establish ... defendant's liability." *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05-cv-1665 (NG)(RLM), 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007). As such, this court "must still determine whether ... plaintiff[s] [have] stated a cause of action" under ERISA and the Taft-Hartley Act in their Complaint. *Bd. of Trs. of the UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, No. 08-cv-2325 (ARR)(JO), 2009 WL 982424, at *3 (E.D.N.Y. Apr. 10, 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Philip Gen. Constr.*, 2007 WL 3124612, at *3 ("Nevertheless, '[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" (alteration in original) (quoting *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989))).

The Taft-Hartley Act "vests the [c]ourt with jurisdiction over civil actions for violations of contracts between an employer and a labor organization that affect commerce." *Trustees of Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-cv-322 (SJ)(ALC), 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), *report and recommendation adopted* 2011

WL 864331 (E.D.N.Y. Mar. 10, 2011) (citing 29 U.S.C. § 185).

Likewise, "ERISA vests the court with jurisdiction over civil

actions brought by fiduciaries of employee benefit plans to

enforce provisions of such plans." *Id.* (citing 29 U.S.C. §§

1002(21), 1002(37); 1132(d)(1)).  Under ERISA, contributions due

to an employee benefit fund must be made according to the terms

of the CBA. *See* 29 U.S.C. § 1145; *City Tile, Inc.*, 2011 WL

917600, at 1.

Here, the Complaint alleges that Midwest REM, an

employer affecting commerce, and the Union are parties to a CBA

obligating Midwest REM to remit certain contributions to the

Funds.  (Compl. ¶¶ 24-25.)  The Complaint further alleges that

Midwest REM failed to make such contributions as required under

the CBA. (*Id.* ¶¶ 42-43.)  Finally, the Complaint alleges that

plaintiffs are fiduciaries of the Funds and are authorized to

file suit to recover delinquent contributions from defendant.

(*Id.* ¶¶ 5, 10, 14.)  Taken together, plaintiffs' allegations

suffice to establish defendant's liability under the Taft-

Hartley Act and ERISA between November 24, 2017 and October 31,

2020.  *See Labarbera v. Frank J. Batchelder Transp. LLC*, No 08-

cv-3387 (SJ)(JMA), 2009 WL 240521, at 3 (E.D.N.Y. Feb. 2, 2009)

(finding liability based on allegations that defendant was party

to collective bargaining agreement and failed to make timely

contributions to union employee benefit funds as required under

the agreement).  Accordingly, the court grants plaintiffs'
motion for entry of default judgment as to liability, for unpaid
contributions between November 24, 2017 through October 31,
2020.[5]

### III. Damages

#### A. Delinquent Contributions, Liquidated Damages, Interest, & Audit Costs

"Although the allegations of a complaint pertaining to
liability are deemed admitted upon entry of a default judgment,
allegations relating to damages are not." *Labarbera*, 2009 WL
240521 at *3 (citing *Credit Lyonnais,* 183 F.3d at 155).  Rather,
the court "must conduct an inquiry to ascertain the amount of
damages with reasonable certainty." *Id.* (citing *Credit
Lyonnais*, 183 F.3d at 155).  In conducting a damages inquiry,
the court need not hold a hearing "'as long as it [has] ensured
that there [is] a basis for the damages specified in the default
judgment.'" *Transatlantic Marine Claims Agency, Inc. v. Ace
Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok
v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).
Thus, "[e]ven in the absence of a hearing, ... the district
court cannot simply rely on the plaintiff's statement of
damages." *House v. Kent Worldwide Mach. Works, Inc.,* 359 F.

---

[5] As noted previously, the court finds that plaintiffs have established the
CBA was effective only for the period of November 24, 2017 through October
31, 2020, pending further documentation.

App'x 206, 207 (2d Cir. Jan. 4, 2010) (summary order) (citing *Transatlantic Marine Claims Agency*, 109 F.3d at 111). "Proof of damages must therefore be based on admissible, authenticated evidence." *Bd. of Trs. of the United Union of Roofers v. Dana Restoration, Inc.*, No. 09-cv-1076 (RRM)(ALC), 2010 WL 3925115, at *2 (E.D.N.Y. Sept. 14, 2010) (citing *House*, 359 F. App'x at 206), *adopted by* 2010 WL 3909232 (E.D.N.Y. Sept. 29, 2010).

In support of their request for unpaid contributions, liquated damages, and interest, plaintiffs submit the affidavit of James M. Steinberg, Esq., counsel of record, and the affidavit of Catherine Chase, administrator for the Funds. (*See generally* Steinberg Aff.; Chase Aff.) Attached to Mr. Steinberg's affidavit are copies of the applicable Trust Agreements and collective bargaining agreements, which set forth Midwest REM's contribution obligations to the Funds. (Steinberg Aff. ¶¶ 6-8.) Although Mr. Steinberg avers that Midwest REM failed to remit required contributions between July 1, 2016 and October 31, 2020, the affidavits and appended documentary evidence are insufficient to establish plaintiffs' damages.

First, in their motion for default judgment, plaintiffs fail to articulate the method by which the unpaid contributions were calculated and do not submit any documents to substantiate the amount of delinquent contributions alleged in the complaint. Second, although Mr. Steinberg affirms that he

15

is "fully familiar with all the facts and circumstances of this action," (*id.* ¶ 1), he does not state that as counsel of record, he has personal knowledge and that he reviewed any remittance reports for the relevant delinquency periods, any notices or correspondence sent to defendant regarding the alleged unpaid contributions, or other records potentially relevant to the amount of estimated unpaid contributions set forth in the complaint. Nor does Ms. Chase state she has personal knowledge and reviewed any reports, correspondence, or other records relevant to the amount of estimated unpaid contributions. "The absence of an affidavit by a person with actual knowledge of the facts, supported by appropriate documentation, deprives the court of the ability to make an independent assessment of the damages to be awarded" at this time. *Trs. of the Local 522 Pension Fund v. Tri-Boro & Rest. Supply Co.,* 12-cv-0163 (KAM)(LB), 2013 WL 685377, at 4 (February 24, 2013); *see also Laborers' Local Union No. 91 Welfare Fund v. Danco Const.,* No. 94-cv-0318E (M), 1996 WL 189510, at 1 (W.D.N.Y. Apr. 17, 1996) (holding that conclusory statements regarding unpaid contributions are insufficient proof of delinquent ERISA contributions). Indeed, in their memorandum in support of their motion for default judgment, plaintiffs submitted that delinquent contributions, interest, liquidated damages, and audit costs "cannot be awarded until such time as an audit is

conduced and a deficiency identified." (Pls.' Mem. at 8.)
Furthermore, no documentary evidence provided includes any
information concerning the amounts that are due, indicates the
number of covered employees employed by Midwest REM. Nor does
the documentation provide any hours worked, and all provisions
for liquidated damages other than attorney's fees and litigation
costs are calculated as a percentage of delinquent contribution
amounts. (*See* Steinberg Aff., Ex. D. Amendment.; Ex. E
Amendment; Ex. F Amendment; Ex. G at 12-13; Ex. H Amendment at
2.) Accordingly, the court denies plaintiffs' application for
damages without prejudice to renew upon submission of proper
documentation.

## B. Attorney's Fees

Plaintiffs move for attorney's fees and costs,
pursuant to 29 U.S.C. § 1132(g)(2)(D). (Steinberg Aff. ¶¶ 10-17;
Pls.' Mem. at 8-11.) "The determination of a reasonable fee
award under Section 1332(g)(2)(D) of ERISA lies within the sound
discretion of the district judge." *Meehan v. Gristede's
Supermarkets, Inc.,* No. 95-cv-2104 (JG), 1997 WL 1097751, at 5
(E.D.N.Y. Sept. 25, 1997) (internal quotes and citation
omitted). *See also Cruz v. Local Union No. 3 of Int'l Bhd. of
Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir.1994). In calculating
a "reasonable" fee award, the court must first establish "the
rate a paying client would be willing to pay." *Arbor Hill*

*Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522
F.3d 182, 190 (2d Cir.2008). Reasonable hourly rates are
determined by reference to fees in the community in which the
action is pending and to the skill and experience of the
attorneys who worked on the matter. *Luciano v. Olsten Corp.*,
109 F.3d 111, 115–16 (2d Cir.1997).

Plaintiffs seek $2,887.50 in attorney's fees,
consisting of 7.25 hours of work by plaintiffs' counsel.
(Steinberg Aff. ¶ 16.) Plaintiffs' counsel, James M. Steinberg,
Esq., a partner practicing since 1995 (Steinberg Aff. ¶ 13),
submitted a "reconstructed record of original time sheets made
contemporaneously with the services performed."[6] (Pls.' Mem. at
8; *see* Steinberg Aff. Ex. J.) Courts have accepted such
documentation as sufficient evidence for an award of attorney's
fees. *See Annuity, Pension, Welfare & Training Funds of the
Int'l Union of Operating Eng'rs, Loc. 14-14B v. Superior Site
Work, Inc.*, No. 15-cv-543 (MKB), 2017 WL 639248, at 7 n.13
(E.D.N.Y. Feb. 16, 2017) ("[C]ourts recognize that '[a]ttorney
affidavits which set forth all charges with the required
specificity but which are reconstructions of the contemporaneous
[time] records ... suffice to permit recovery of attorneys'

_____

[6] Mr. Steinberg stated in his Affidavit in Support of Plaintiffs' Motion
for a Default Judgment that this time sheet accurately reflects the
expenditure of his time in the case, though he misidentifies the relevant
exhibit. (Steinberg Aff. ¶ 15; *see* Steinberg Aff., Ex. J.)

fees[.]'" (quoting *David v. Sullivan*, 777 F. Supp. 212, 223
(E.D.N.Y. 1991))).  Counsel seeks an hourly rate of $390 for
work performed in 2020 and $400 for work performed in 2021.
(Pls' Mem. at 8.)  The court finds these hourly rates reasonable
and in line with rates awarded in this area to counsel with
comparable experience.  *See Gesualdi v. D. Gangi Contracting
Corp.*, No. 18-cv-3773 (FB)(SJB), 2019 WL 1130729, at 8 (E.D.N.Y.
Feb. 11, 2019) ("[R]easonable hourly rates in this district for
ERISA matters have ranged from $300 to $450 for partners....")
(quoting *Finkel v. Captre Elec. Supply Co.*, No. 14-cv-3584
(RJO)(JO), 2015 WL 5316257 (E.D.N.Y. July 31, 2015)).

Having determined the hourly rates to be used during
the relevant time periods ($390 for 2020 and $400 for 2021), the
court now turns to the reasonableness of the hours billed in
this matter.  Courts uphold fee requests in ERISA cases when
they determine that such fees are "reasonable."  *See Trs. of the
United Teamster Fund v. Ronnie's Truck Serv., Inc.*, No. 07-cv-
4456 (CPS)(RML), 2008 WL 2686993, at 4 (E.D.N.Y. July 8, 2008)
(citing *McDonald ex rel. Prendergast v. Pension Plan of the
NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir.2006)).
"The number of hours spent on litigation and the staffing
pattern utilized is unreasonable if it is excessive, redundant
or otherwise unnecessary."  *Bourgal v. Atlas Transit Mix*, No.
93-cv-0569 (CPS), 1996 WL 75290, at 7 (E.D.N.Y. Feb. 7, 1996).

Plaintiffs seek compensation for 7.25 hours of work performed by Mr. Steinberg, which involved preparation of the complaint and of the motion for default judgment. (Steinberg Aff. ¶ 16.) The court finds that the time expended by counsel in connection with this action is reasonable in light of other similar ERISA default judgment cases. *See e.g.*, *Cement & Concrete Workers Dist. Council Welfare* Fund, 2009 WL 928331, at 8.

### C. Costs

Plaintiffs also seek costs in the amount of $517, consisting of $402 for the court's filing fee and $115 for service of process. (Pls.' Mem. at 10.) In support of the costs sought, plaintiffs provide an invoice for professional services. (Steinberg Aff., Ex. I.) A court will generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir.1987) (internal quotation marks and citations omitted). "A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overhead." *LaBarbera v. Cent. Design Sys. Inc.*, No. 06-cv-2709 (ARR)(RML), 2006 WL 3422645, at 4 (E.D.N.Y. Nov. 28, 2006) (internal quotations and citations omitted). Accordingly, the court awards $517.00 to plaintiffs for the reasonable costs incurred in the prosecution of this action.

## CONCLUSION

For the foregoing reasons, the court: (1) grants in part plaintiffs' motion for a default judgment against defendant as to liability and for an audit between November 24, 2017 through October 31, 2020; (2) denies plaintiffs' application for damages without prejudice, and for an audit prior to November 24, 2017; and (3) grants plaintiff's request for $2,887.50 in attorney's fees and $517 in costs.  Upon the submission of proper documentation, including, but not limited to payroll records of covered employees any other relevant collective bargaining agreements, the court will conduct an inquest on plaintiffs' damages.

Plaintiffs are directed to serve a copy of this Memorandum and Order on defendant and file a declaration of service by July 9, 2021.  By July 13, 2021, plaintiffs shall advise the Court via ECF how they intend to proceed.


**SO ORDERED.**

Dated:     July 6, 2021
           Brooklyn, New York
                                    _____
                                         //s//
                                    **KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York